Hebbebt R. Bbown, J.
The single issue before the court is whether the statement “We want to talk to you about Bobby Bennett” is a “further interrogation” prohibited by Edwards v. Arizona (1981), 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378. Edwards and its progeny have established a bright-line test for dealing with defendants who invoke their right to counsel. Simply stated, if a defendant requests counsel, the police must stop all questioning and interrogation immediately. Any statement, question or remark which is “reasonably likely to elicit an incriminating response” is an interrogation. Rhode Island v. Innis (1980), 446 U.S. 291, 301, 100 S.Ct. 1682, 1689-1690, 64 L.Ed.2d 297, 308.
Although the court of appeals correctly stated the law it erred in applying it. The appeals court held that the statement “We wanted to talk to you about Bobby Bennett,” made after the defendant had requested counsel, was not an interrogation. For the reasons which follow, we disagree. The use of statements made by the defendant after his request for an attorney violated his right under the Fifth and Fourteenth Amendments (as set forth in Edwards, supra) to have counsel present during custodial interrogation.
*496 In Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 36 O.O.2d 237, the United States Supreme Court held that when a defendant requests an attorney, the police must stop interrogation until an attorney is present. “Interrogation” has been defined as including “any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.” (Footnotes omitted.) Rhode Island v. Innis (1980), 446 U.S. 291, 301, 100 S.Ct. 1682, 1689-1690, 64 L.Ed.2d 297, 308. It is not necessary to phrase the communication in the form of a question to constitute an interrogation.
Once a defendant invokes his right to counsel, police may talk to him only if the defendant himself initiates further communications. Edwards v. Arizona, supra. “This ‘rigid’ prophylactic rule * * * embodies two distinct inquires. First, courts must determine whether the accused actually invoked his right to counsel. * * * Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on the finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked.” (Citations omitted.) Smith v. Illinois (1984), 469 U.S. 91, 95, 105 S.Ct. 490, 492-493, 83 L.Ed.2d 488, 493-494. This bright-line test prevents the police from wearing down and confusing the defendant to obtain a wáiver of his rights. Id. at 98, 105 S.Ct. at 494, 83 L.Ed.2d at 495-496.
The Edwards, bright-line prophylactic rule is equally applicable to “police-initiated interrogation following a suspect’s request for counsel * * * in the context of a separate investigation.” Arizona v. Roberson (1988), 486 U.S. 675, 682, 108 S.Ct. 2093, 2098, 100 L.Ed.2d 704, 714. Once counsel is requested, the police may not question the defendant regarding any crime until an attorney is present.[1] If they do, they violate the defendant’s constitutional rights and any statements obtained cannot be used.
In the present case, the defendant, Knuckles, requested counsel immediately after the police read him his rights. At this point questioning should have stopped. However, the police “informed” Knuckles that they only wanted to talk to him about Bobby Bennett, not the bad checks charge he was arrested for. There are several factors which require the holding that the statement *497 “We want to talk to you about Bobby Bennett” was an interrogation prohibited by Edwards.
First, the only reason Knuckles was arrested was so the police could talk to him about Bennett’s murder. They had no intention of pursuing the bad checks charge. The statement was more than the “offhand remarks” in Innis, supra, 446 U.S. at 303,100 S.Ct. at 1691, 64 L.Ed.2d at 309, which were found not “reasonably likely to elicit an incriminating response.” “[W]here a police practice is designed to elicit an incriminating response from the accused, it is unlikely that the practice will not also be one which the police should have known was reasonably likely to have that effect.” Id., 446 U.S. at 302, 100 S.Ct. at 1690, 64 L.Ed.2d at 308, fn. 7.
Second, even if the arrest for the bad checks charge had not been a pretext for bringing Knuckles in to talk about Bennett’s murder, the statement was still interrogatory in nature. The statement invited a response.
Finally, the rule in Edwards was adopted to avoid cases such as this. The prosecution argues the statement was made simply to advise Knuckles of the subject matter the police wanted to discuss. However, Edwards gives the police a rigid bright-line rule for dealing with suspects who have invoked their right to counsel.
As we said in State v. Williams (1983), 6 Ohio St.3d 281, 6 OBR 345, 452 N.E.2d 1323, at paragraph four of the syllabus: “Once an accused invokes his right to counsel, all further custodial interrogation must cease and may not be resumed in the absence of counsel unless the accused thereafter effects a valid waiver of his right to counsel or himself renews communication with the police.” The bright-line rule established in these cases eliminates the need for ad hoc determinations by the courts regarding what communications with a defendant are permissible once counsel is requested. It removes uncertainty by stopping all interrogation. It clearly tells the police what cannot be done.
This is not to say that once a suspect requests counsel the police may not ask routine questions necessary for booking. Pennsylvania v. Muniz (1990), 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528. But even these questions are limited. In Muniz the court allowed questions regarding the defendant’s name, address, height, weight, eye color, date of birth, and current age. It did not allow a question asking the date of the defendant’s sixth birthday. The statement made to Knuckles, after he had asked for counsel, was not a routine booking question.
Accordingly, we hold that the statement “We want to talk to you about Bobby Bennett” was an interrogation prohibited by Edwards. The judgment of the court of appeals is reversed and the cause is remanded.

Judgment reversed and cause remanded.

*498 Moyer, C.J., Sweeney, Douglas and Wright, JJ., concur.
Holmes and Resnick, JJ., separately dissent.

. The court of appeals cited McNeil v. Wisconsin (1991) 501 U.S. -, 111 S.Ct. 2204, 115 L.Ed.2d 158, for the proposition that a request for counsel is offense-specific. McNeil concerns the Sixth Amendment right to have counsel present at adversarial hearings. The case before us deals with the Fifth Amendment right to have counsel present during interrogation to guard against self-incrimination. McNeil is not applicable to this case.