DECISION AND JOURNAL ENTRY
{¶ 1} Defendant, Robert C. Golubov, appeals the decision of the Wayne County Court of Common Pleas denying his motion to suppress evidence. We affirm the decision of the trial court.
 {¶ 2} On May 20, 2004, Defendant was indicted for one count of illegal manufacture of drugs under R.C. 2925.04, one count of illegal assembly or possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.041, and one count of possession of drugs under R.C. 2925.11. Defendant filed a motion to suppress any and all evidence and statements taken as a result of the search which led to his arrest. The trial court conducted a suppression hearing on October 13, 2004, and on November 4, 2004, overruled Defendant's motion to suppress the evidence.
 {¶ 3} Defendant changed his plea from not guilty to one of no contest to the three charges in the indictment on January 12, 2005. The trial court dismissed the specifications as to the three counts in the indictment. On February 15, 2005, Defendant appeared for his sentencing hearing and was sentenced to serve six years in prison for each of the three counts. The prison terms were ordered to run concurrently for a total prison term of six years.
 {¶ 4} Defendant now appeals, raising two assignments of error for our review.
 ASSIGNMENT OF ERROR I
"The trial court erred in allowing admission of the evidence obtained without a valid search warrant in violation of [Defendant's] rights to due process as guaranteed by the 4th, 5th, 6th, and 14th Amendment to the U.S. Constitution as well as Article 1 Section 14, 1 Section 10 of the Ohio Constitution."
 {¶ 5} In his first assignment of error, Defendant claims that the trial court erred in admitting evidence obtained against him from the search of his property. Specifically, Defendant alleges that the initial entry by the police officers onto his property was illegal, and thus, the evidence gained from that initial entry should not have been used as support in obtaining a search warrant. Therefore, Defendant argues, his motion to suppress should have been granted. We disagree and affirm the decision of the trial court.
 {¶ 6} The decision to grant or deny a motion to suppress involves a mixed question of law and fact. State v. Putnam (Feb. 27, 2002), 9th Dist. No. 20629, at 3. The trial court is in the best position to resolve factual questions and assess the credibility of witnesses when evaluating a motion to suppress. State v. Mills (1992), 62 Ohio St.3d 357, 366. Consequently, an appellate court must accept the trial court's findings of fact so long as they are supported by competent, credible evidence.State v. Fanning (1982), 1 Ohio St.3d 19, 20. However, an appellate court reviews a trial court's legal conclusions on a motion to suppress evidence de novo. State v. Nazarian, 9th Dist. No. 04CA0017-M,2004-Ohio-5448, at ¶ 8. A de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination. State v. Amore, 9th Dist. No. 03CA008281, 2004-Ohio-958, at ¶ 6.
 {¶ 7} The trial court conducted a suppression hearing on Defendant's motion. At that hearing, the parties essentially agreed to the facts surrounding Defendant's arrest. Acting upon information that, on the pervious day, Defendant had purchased six boxes of pseudoephedrine, a common ingredient used in the manufacture of methamphetamine, officers from the Medway Drug Enforcement Agency and the Wayne County Sheriff's Office went to Defendant's home to perform a "knock and talk" inquiry. A "knock and talk," according to Detective Lamb of the Medway Drug Enforcement Agency, is a term used when the officers "go to somebody's house to speak with them about an investigation."
 {¶ 8} As the officers were approaching Defendant's home to attempt to talk to him about their investigation, they observed Defendant in his driveway getting into his car. The officers approached Defendant and noticed, in plain view, a marijuana cigarette in his car. The officers asked Defendant if he had purchased six boxes of Sudafed (pseudoephedrine) on the day before, and Defendant responded that he had, and they were in his house. Thereupon, the officers asked if they could search the premises and Defendant declined permission.
 {¶ 9} The officers called Detective Lamb, who was typing a search warrant, to report the information gleaned from their visit to Defendant's residence. Detective Lamb included in his affidavit the information about the Sudafed and the marijuana cigarette. Based upon Detective Lamb's affidavit, Judge Evans signed a search warrant permitting the entry and search of Defendant's home, vehicles, and person.
 {¶ 10} Defendant urges that the initial "knock and talk" entry into his property was not lawful, and thus, the marijuana cigarette and the admission by Defendant that he had bought the Sudafed was "fruit of the poisonous tree." Neither party argues that the marijuana cigarette was not in plain view in Defendant's car, or that it was not apparent that the cigarette was marijuana. The issue here is whether the initial intrusion leading to the discovery of the marijuana was legal. We find that police officers have a right to question citizens regarding criminal investigations and approaching someone on their driveway to ask a question is not an unlawful intrusion.
 {¶ 11} In the case at hand, the police officers approached Defendant's house to question him. At that time, they observed Defendant getting into his car. Seeing Defendant outside of the house, the officers walked over to him. Contrary to Defendant's assertions, we find that the officer's intrusion onto his driveway was legal. We previously stated that "homeowners * * * do not have a reasonable expectation of privacy as to what can be routinely viewed from their driveway[.]" State v. Stevenson
(May 15, 1996), 9th Dist. No. 95CA0036, at 9.
"In the course of urban life, we have come to expect various members of the public to enter upon such a driveway, e.g., brush salesmen, newspaper boys, postmen, Girl Scout cookie sellers, distressed motorists, neighbors, friends. Any one of them may be reasonably expected to report observations of criminal activity to the police[.] If one has a reasonable expectation that various members of society may enter the property in their personal or business pursuits, he should find it equally likely that the police will do so.
"[T]here would be no colorable Fourth Amendment question had the police walked up the driveway in order to knock on [Defendant's] door to ask him some questions. Criminal investigation is as legitimate a societal purpose as is census taking or mail delivery. The "plain view" doctrine would clearly have applied to any observations made on the way to the door." State v. Alexander (Oct. 6, 2000), 2nd Dist. No. 2000-CA-6, at 5-6. (Citations omitted).
 {¶ 12} A criminal investigation serves a legitimate societal purpose and, as such, the police have a right to question citizens. Id. Seeing the individual that they were there to question in his driveway, the police were not acting outside of permitted behavior in approaching him. When the officers reached Defendant, they noticed a marijuana cigarette in plain view. "[U]nder [the plain view] doctrine, an officer may seize an item without a warrant if the initial intrusion leading to the item's discovery was lawful and it was `immediately apparent' that the item was incriminating." State v. Waddy (1992), 63 Ohio St.3d 424, 442, quotingCoolidge v. New Hampshire (1971), 403 U.S. 443, 466, 91 S. Ct. 2022,29 L.Ed.2d 564.
 {¶ 13} In the case at hand, the officers' initial intrusion onto Defendant's driveway was lawful. Thus, they were permitted to use facts gleaned from their intrusion in the affidavit supporting the application for a search warrant. We overrule Defendant's first assignment of error.
 ASSIGNMENT OF ERROR II
"The trial court erred in allowing admission of evidence obtained through an invalid warrant based upon misinformation by the affiant in violation of [Defendant's] rights as offered under the 4th, 5th, 6th, and14th Amendment to the U.S. Constitution as well as Article 1 Section 10
and 1 Section 14 of the Ohio Constitution."
 {¶ 14} In his second assignment of error, Defendant alleges that the warrant was based on inaccurate information and thus, was invalid. We disagree.
 {¶ 15} In the supporting affidavit, the affiant, Detective Lamb, included the following statement to which Defendant takes issue:
"On May 28, 2003 this Agency received information from the Smithville Police that [Defendant] attempted to purchase a small quantity of anhydrous ammonia from the Farmer's Co-Op (Agremark) in Smithville. The clerk informed [Defendant] that anhydrous ammonia is only sold in two (2) ton lots and attempted to sell [Defendant] an alternative product for his garden. [Defendant] refused and left. Since that time, Smithville Police has had two (2) reported thefts of anhydrous ammonia from Agremark on March 19th, 2004 and April 12, 2004. * * *
"Anhydrous Ammonia is a known precursor used in the manufacturing of Methamphetamine."
 {¶ 16} Defendant maintains that the inclusion of the above statement in the affidavit was misleading and made with reckless disregard for the truth. Defendant argues that there was no evidence linking him to the theft or possession of anhydrous ammonia and the above statement was intended solely to mislead the judge.
 {¶ 17} The statement, while it does mention the theft of anhydrous ammonia from a location that Defendant had unsuccessfully tried to purchase it, does not claim or insinuate that Defendant was responsible for the theft. Additionally, even if we were to consider the above statement erroneous or invalid, which we do not, it would not serve to invalidate an otherwise valid warrant. "The United States Supreme Court has held that, after excising tainted information from a supporting affidavit, `if sufficient untainted evidence was presented in the warrant affidavit to establish probable cause, the warrant was nevertheless valid.'" State v. Gross (2002), 97 Ohio St.3d 121, 2002-Ohio-5524, quoting United States v. Karo (1984), 468 U.S. 705, 719, 82 L. Ed. 2d 530. In the case at hand, we find that the affidavit was sufficient to establish probable cause even if we were to omit the statements to which Defendant objects.
 {¶ 18} In reviewing the sufficiency of probable cause in a supporting affidavit, this Court may not substitute its own judgment for that of the issuing judge by conducting a de novo review as to whether the affidavit contains sufficient probable cause upon which the reviewing court would issue the search warrant. State v. Tejada, 9th Dist. No. 20947, 2002-Ohio-5777, at ¶ 7. "On the contrary, reviewing courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." State v. George (1989), 45 Ohio St.3d 325, 330. (Citation omitted.) "[T]he standard for probable cause does not require a prima facie showing of criminal activity; rather, the standard requires `only a showing that a probability of criminal activity exists.'" Tejada
at ¶ 8, quoting State v. Young (2001), 146 Ohio App.3d 245, 254.
 {¶ 19} Detective Lamb of the Medway Drug Enforcement Agency in Wayne County, Ohio prepared an extensive affidavit in support of the search warrant in this case. The affidavit states that information was provided that Defendant had purchased six boxes of Sudafed from Target on the previous day. There is a limit on how many boxes of Sudafed a person can buy at a time (due to the fact that it is so often used to cook methamphetamines), so Defendant had to get in line twice. He purchased the first three boxes and then got back in line and purchased three more boxes.
 {¶ 20} Knowing that Sudafed contains ephedrine, which is one of the main ingredients in the production of methamphetamines, police officers went to Defendant's residence and attempted a "knock and talk" whereby they aimed to question him about their investigation. While on Defendant's property, the officers observed motion sensors and peek holes on the garage door, which the affiant stated were common for someone who was manufacturing methamphetamines to alert them of another's approach.
 {¶ 21} Defendant did not answer his front door, however, the officers observed him getting into his car and saw, in plain view, a marijuana cigarette. Defendant admitted, when questioned, that he had purchased six boxes of Sudafed on the previous day and stated that they were in his house. The officers asked Defendant to show them the Sudafed, and he refused.
 {¶ 22} Based upon the totality of the circumstances, we agree with the issuing judge that the Detective Lamb provided probable cause for a search of Defendant's address, his person and vehicles for evidence of the manufacture and/or possession of methamphetamine. Even if we excised the offending statement, we conclude that the remainder of the supporting affidavit independently suffices to establish probable cause for the search warrant. See Gross, 97 Ohio St.3d at 125; Karo, 468 U.S. at 719. Accordingly, we find Defendant's second assignment of error to be without merit.
 {¶ 23} We overrule Defendant's two assignments of error and affirm the judgment of the Wayne County Court of Common Pleas.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
Exceptions.
Carr, J. Batchelder, J. concur.